CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer**,<br><br>    Plaintiff,<br><br>v.<br><br>**Babic G. Babikian;**<br>**Anahid Babikian;**<br>**Trirerk Aksornkit;** and Does 1-10,<br><br>    Defendants. | **Case No**.<br><br>**Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Chris Langer complains of Babic G. Babikian; Anahid Babikian; Trirerk Aksornkit; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility. He has a specially equipped van with a ramp that deploys out of the passenger side of his van and he has a Disabled Person Parking Placard issued to him by the State of California.

2. Defendants Babic G. Babikian and Anahid Babikian owned the real property located at or about 1711 N. Normandie Avenue, Los Angeles, California, in December 2018.

3. Defendants Babic G. Babikian and Anahid Babikian own the real property located at or about 1711 N. Normandie Avenue, Los Angeles, California, currently.

4. Defendant Trirerk Aksornkit owned the Fukurou Ramen restaurant located at or about 1711 N. Normandie Avenue, Los Angeles, California, in December 2018.

5. Defendant Trirerk Aksornkit owns the Fukurou Ramen restaurant ("Restaurant") located at or about 1711 N. Normandie Avenue, Los Angeles, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause

Complaint

of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the property to eat at the Restaurant and shop at the B&G Pharmacy ("Pharmacy") in December 2018 with the intention to avail himself of its goods or services, motivated in part to determine if the defendants comply with the disability access laws.

11. The Restaurant and Pharmacy are facilities open to the public, places of public accommodation, and business establishments.

12. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant and Pharmacy.

13. Unfortunately, there were no compliant, accessible parking spaces in the parking lot serving the Restaurant and Pharmacy.

14. Instead, there was just an old, faded parking space that was once reserved for persons with disabilities. The faded parking stall measured about 104 inches in width. The access aisle was so faded that it was difficult to see. Still, the old access aisle was triangular in shape and narrowed, at one point, to as little as about 15 inches in width. At its widest, the access aisle was about 92 inches in width. This access aisle, even if it was painted perfectly and visible (which is it not), would not qualify as compliant.

15. Additionally, there was no "NO PARKING" warning in the old access aisle.

16. The bottom of the ADA signage in front of the parking stall, meanwhile,

Complaint

was about 45 inches in height. This is too low for persons with disabilities to see when cars are parked in the stall.

17. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

18. Plaintiff personally encountered these barriers.

19. Transaction counters are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

20. Even though the plaintiff did not personally confront the barrier, the transaction counter at the Restaurant is more than 36 inches in height. In fact, the transaction counter is about 42 inches in height.

21. There is no lowered, 36 inch portion of the transaction counter at the Restaurant for use by persons in wheelchairs to conduct transactions.

22. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty.

23. Paths of travel are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

24. Unfortunately, the path of travel leading to the restroom at the Restaurant narrows to about 14 inches in width because of tools and boxes that defendants store along the pathway to the restroom. This is not accessible to wheelchair users, including plaintiff.

25. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

26. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous

alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

27. For example, there are numerous paint/stripe companies that will come and stripe a parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

28. A common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

29. Plaintiff will return to the Restaurant and Pharmacy to avail himself of their goods or services and to determine compliance with the disability access laws. He is currently deterred from doing so because of his knowledge of the existing barriers. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again.

30. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

Complaint

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

31. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

32. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals

Complaint

1 with disabilities. 42 U.S.C. § 12183(a)(2).

33. Any business that provides parking spaces must provide accessible parking spaces. 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2 Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. Id. It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. Id. Signs must be posted so that they cannot be obscured by a vehicle parking in the space. Id. An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. Id. Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. Id. Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. Id. And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. Id.

Complaint

34. Here, there was no blue border around an access aisle or parking stall, there was no "NO PARKING" lettering, no fine language, the ADA signage mounted on the fence was too low, and the parking simply failed to comply.

35. Each accessible parking stall must have an access aisle adjacent to it. Standard accessible parking stalls can have a 60 inch wide access aisle while van accessible stalls must have a 96 inch wide access aisle. 2010 Standards § 502.2.

36. The failure to have an access aisle is a violation of the ADA.

37. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. The minimum clear width of an accessible route shall be 36 inches. 2010 Standards § 403.5.1.

38. Here, the failure to provide an accessible path of travel to the restroom at the Restaurant is a violation of the ADA.

39. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit do not comply with the 1991 Standards.

40. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

41. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

42. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia,

that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

43. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

44. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

45. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 per offense.

Complaint

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: December 27, 2018        CENTER FOR DISABILITY ACCESS

By: _____
          Chris Carson, Esq.
          Attorney for plaintiff

Complaint